**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAFAEL ZARAGOZA RIOS, | No. 23-801 |
| Petitioner, | |
| v. | Agency No. A205-465-499 |
| TODD BLANCHE, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 13, 2026
San Francisco, California

Before: MURGUIA, Chief Judge, and S.R. THOMAS and MILLER, Circuit
Judges.
Concurrence by Chief Judge MURGUIA.

Petitioner Rafael Zaragoza Rios, a native and citizen of Mexico, petitions for

review of a decision of the Board of Immigration Appeals ("BIA") affirming the

Immigration Judge's ("IJ") denial of his applications for cancellation of removal,

asylum, withholding of removal, and protection under the United Nations

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Convention Against Torture ("CAT"). Because the parties are familiar with the factual and procedural history of the case, we need not recount it here.

We have jurisdiction pursuant to 8 U.S.C. § 1252. Where "the BIA reviewed the IJ's factual findings for clear error, and reviewed de novo all other issues, our review is 'limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted.'" *Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019) (quoting *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006)). We review legal conclusions de novo and factual findings for substantial evidence. *Id.* We deny the petition for review.

I

The BIA did not err in determining that Zaragoza Rios is ineligible for cancellation of removal due to his state court convictions. A noncitizen is ineligible for cancellation of removal when he has been convicted of a crime involving moral turpitude ("CIMT"). *Flores-Vasquez v. Garland*, 80 F.4th 921, 924–25 (9th Cir. 2023); 8 U.S.C. §§ 1229b(b)(1)(C), 1227(a)(2)(A)(i). "A conviction constitutes a crime of moral turpitude only 'if the full range of conduct encompassed by the statute, including the least egregious conduct prosecuted under the statute, is a crime of moral turpitude.'" *Flores-Vasquez*, 80 F.4th at 925 (quoting *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903 (9th Cir. 2007)). "If

2

there is a 'realistic probability' that the statute of conviction would be applied to non-turpitudinous conduct, there is no categorical match." *Fugow v. Barr*, 943 F.3d 456, 458 (9th Cir. 2019) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

We have held that a conviction under section 422 of the California Penal Code is categorically a CIMT. *Latter-Singh v. Holder*, 668 F.3d 1156, 1163 (9th Cir. 2012). Here, Zaragoza Rios was convicted under § 422 and this panel is bound to follow *Latter-Singh*, which forecloses Zaragoza Rios's argument that his convictions under § 422 are not CIMTs. *See Medina-Rodriguez v. Barr*, 979 F.3d 738, 745–46 (9th Cir. 2020) (concluding that panel was bound by a prior decision finding a categorical match between petitioner's conviction and the generic federal aggravated felony offense, *Roman-Suaste v. Holder*, 766 F.3d 1035 (9th Cir. 2014), such that it could not consider petitioner's argument that subsequent state court decisions undermined *Roman-Suaste*).

## II

Zaragoza Rios also contends that Congress failed to lay down an intelligible principle in codifying the moral turpitude standard and, thus, that this standard constitutes an unconstitutional delegation of legislative power to the executive and judicial branches. The nondelegation doctrine bars Congress from "transfer[ring]

3

to another branch powers which are strictly and exclusively legislative." *United States v. Keller*, 142 F.4th 645, 656 (9th Cir. 2025) (per curiam) (quoting *Gundy v. United States*, 588 U.S. 128, 135 (2019) (plurality opinion)) (internal quotation marks omitted). But a statutory delegation "is permissible so long as Congress articulates an 'intelligible principle' by which the actor empowered to exercise delegated authority can conform." *Id.* (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). In other words, "[a] delegation of authority will be upheld so long as Congress delineates 'the general policy, the public agency which is to apply it, and the boundaries of the delegated authority.'" *Id.* at 657 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)) (alteration adopted). "The standards for satisfying this test are 'not demanding,'" and "'[o]nly twice in this country's history,' both times in 1935, has the Supreme Court 'found a delegation excessive—in each case because Congress had failed to articulate *any* policy or standard to confine discretion.'" *Id.* at 656–57 (quoting *Gundy*, 588 U.S. at 146).

Section 1227(a)(2)'s reference to "a crime involving moral turpitude" provides a sufficiently intelligible principle. The term "moral turpitude" has "deep roots in the law" and has been used in federal immigration law since 1891. *See Jordan v. De George*, 341 U.S. 223, 227, 229 n.14 (1951). Crimes involving moral turpitude have "two essential elements: reprehensible conduct and a culpable

4

mental state." *Lemus-Escobar v. Bondi*, 158 F.4th 944, 959 (9th Cir. 2025) (citation omitted). The concept is not any less defined than other standards that nonetheless satisfy the intelligible principle requirement. *See United States v. Pheasant*, 129 F.4th 576, 580 (9th Cir. 2025).

III

The BIA did not err in its determination that Zaragoza Rios is ineligible for asylum and withholding of removal. To qualify for asylum, an applicant must show past persecution or a well-founded fear of future persecution, and a protected ground as "one central reason" for the harm. *Rodriguez Tornes v. Garland*, 993 F.3d 743, 750–51 (9th Cir. 2021). To qualify for withholding of removal, an applicant must show a "clear probability of persecution" and a protected ground as "a reason" for the harm. *Salguero Sosa v. Garland*, 55 F.4th 1213, 1221 (9th Cir. 2022).

The BIA did not err in finding that the harm Zaragoza Rios experienced as a child does not rise to the level of persecution.[1] The attack to which Zaragoza Rios testified was an isolated incident, with no further issues involving the attackers. And despite the threats made at the time, Zaragoza Rios and his father reported the

---

[1] Because the result would be the same under either standard, we do not resolve whether de novo or substantial evidence review applies. *See Flores Molina v. Garland*, 37 F.4th 626, 633 n.2 (9th Cir. 2022).

incident to the police without facing retaliation. In addition, Zaragoza Rios has made no argument and produced no evidence that he and his father were targeted for a specific reason.

Further, Zaragoza Rios does not challenge the agency's determination regarding well-founded fear of future persecution in his asylum claim, and substantial evidence supports the conclusion that he failed to demonstrate eligibility for withholding of removal.

IV

Substantial evidence supports the BIA's determination that Zaragoza Rios is ineligible for CAT protection. To demonstrate eligibility for relief, the applicant has "the burden to prove that it is more likely than not that (1) [he], in particular, would be (2) subject to harm amounting to torture (3) by or with the acquiescence of a public official, if removed." *Garcia v. Wilkinson*, 988 F.3d 1136, 1147 (9th Cir. 2021). Neither the country conditions evidence nor his brother's experience in 2014 compels the conclusion that Zaragoza Rios faces a particularized threat of torture if he returns to Mexico.

**PETITION FOR REVIEW DENIED.**[2]

---

[2] The motion for stay of removal is denied effective with the issuance of the mandate. (Dkt. Nos. 5, 9).

6

FILED

AUG 14 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MURGUIA, Chief Judge, concurring:

In *Latter-Singh v. Holder*, we compared the elements of California Penal Code § 422 to the generic definition of moral turpitude and held that § 422 is categorically a crime involving moral turpitude ("CIMT"). 668 F.3d 1156, 1163 (9th Cir. 2012). In *Medina-Rodriguez v. Barr*, we held that prior precedent finding such a categorical match is binding—even when the petitioner points to state court decisions that may call the categorical match into question. 979 F.3d 738, 745–46 (9th Cir. 2020).

I agree that, following *Latter-Singh* and *Medina-Rodriguez*, this panel is foreclosed from engaging in the "realistic probability" approach, under which we would consider whether California "in fact" applied California Penal Code § 422 to conduct that did not involve moral turpitude at the time of Zaragoza Rios's convictions. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

I write separately to highlight the tension between *Medina-Rodriguez* and case law from our Court and the Supreme Court explaining that there are "two ways" to show that an offense is not categorically a CIMT. *Alfred v. Garland*, 64 F.4th 1025, 1043 (9th Cir. 2023) (en banc). We considered only the elements-based approach in *Latter-Singh*. Zaragoza Rios now asks us to consider the "realistic probability" approach. Were it not for this Court's decision in *Medina-Rodriguez*, I would apply

1

the "realistic probability" approach and consider whether California has in fact applied § 422 to conduct that does not involve moral turpitude.

## I.

To establish a categorical mismatch, a petitioner may: (1) show that the statute's elements do not match the generic definition; or (2) point to state court decisions to establish a "realistic probability" that "the State would apply its statute to conduct that falls outside the generic definition." *Alfred*, 64 F.4th at 1043 (quoting *Duenas-Alvarez*, 549 U.S. at 193); *see also United States v. Keast*, 152 F.4th 1039, 1049 (9th Cir. 2025); *United States v. DeFrance*, 124 F.4th 814, 819 (9th Cir. 2024). Under the first approach, we compare the text of the state statute to the generic standard "to see if 'greater breadth is evident from its text.'" *Alfred*, 64 F.4th at 1043 (quoting *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020)). Under the second approach, we review state case law to see whether there is a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* (quoting *Duenas-Alvarez*, 549 U.S. at 193). "If there is a 'realistic probability' that the statute of conviction would be applied to non-turpitudinous conduct, there is no categorical match." *Fugow v. Barr*, 943 F.3d 456, 458 (9th Cir. 2019) (quoting *Duenas-Alvarez*, 549 U.S. at 193).

2

The Government argues that these two approaches are "really about the same thing: construing a statute's elements."  But the Supreme Court rejected that argument in *United States v. Taylor*, 596 U.S. 845 (2022), and clearly distinguished between the two inquiries.  The Supreme Court explained that, in *Duenas-Alvarez*, "the elements of the relevant state and federal offense clearly overlapped" and therefore "the only question the Court faced was whether state courts *also* 'appl[ied] the statute in [a] special (nongeneric) manner.'"  *Taylor*, 596 U.S. at 859 (alteration in original) (quoting *Duenas-Alvarez*, 549 U.S. at 193).  In other words, although the elements-based approach appeared to show a categorical match, the petitioner could still establish a "realistic probability" that "the State would apply its statute to conduct that falls outside the generic definition of [the] crime," thus disproving the match.  *Duenas-Alvarez*, 549 U.S. at 193.

We have since confirmed that a petitioner has "two paths" to show a categorical mismatch, not one.  *Keast*, 152 F.4th at 1049 (quoting *United States v. Castro*, 71 F.4th 735, 741 (9th Cir. 2023)).  The second path is an "*alternative* to relying on the statutory text alone." *Id.*

## II.

In *Latter-Singh*, we held that California Penal Code § 422 is categorically a CIMT under the elements-based approach.  We highlighted three reasons for reaching that conclusion.  668 F.3d at 1161–62.  First, § 422 requires "proof of a

3

threat of 'death[ ] or serious bodily injury.'" *Id.* at 1162 (quoting Cal. Penal Code § 422) (alteration in original). Second, § 422 criminalizes only threats that are "so unequivocal, unconditional, immediate, and specific as to convey" a grave and immediate prospect of execution of the threat. *Id.* (quoting Cal. Penal Code § 422). We noted that the statute "proscribes a narrow category of speech that 'instill[s] fear in others.'" *Id.* (alteration in original) (quoting *In re Ryan D.*, 100 Cal. App. 4th 854, 861 (2002)). Third, the defendant must have the "specific intent" that the listener understand the statement as a threat. *Id.* at 1163 (quoting Cal. Penal Code § 422).

In *Latter-Singh*, neither party discussed whether § 422 is a CIMT under the "realistic probability" approach, and we did not consider it. Zaragoza Rios asks us to consider that question now: whether, at the time of his convictions, a "realistic probability" existed that California would apply § 422 "to conduct that falls outside the generic definition" of moral turpitude. *Duenas-Alvarez*, 549 U.S. at 193.

### III.

I agree with my colleagues that we cannot reach the "realistic probability" question in this case because we are bound by the reasoning of *Medina-Rodriguez*. The petitioner in *Medina-Rodriguez* was convicted of possession for sale of marijuana in violation of California Health & Safety Code § 11359. 979 F.3d at 742. We had previously held that a § 11359 conviction is a categorical match to the

4

federal marijuana offense, applying the elements-based approach. *Id.* at 744–45 (citing *Roman-Suaste v. Holder*, 766 F.3d 1035 (9th Cir. 2014)). Medina-Rodriguez argued that we should revisit our prior holding en banc, pointing to state court decisions suggesting that California had applied § 11359 to nongeneric conduct. *Id.* at 746. In other words, Medina-Rodriguez made an argument under the "realistic probability" approach.

We concluded that we could not consider those state court decisions because we were bound by our prior holding that a § 11359 conviction is a categorical match to the federal marijuana offense. *Id.* at 745–46. In reaching that conclusion, we did not recognize that the elements-based approach is only one of two approaches available to petitioners to demonstrate a categorical mismatch.

**IV.**

If we could depart from the reasoning of *Medina-Rodriguez,* I would conclude that for the period that covers Zaragoza Rios's 2012 convictions, California courts "in fact" applied § 422 to conduct that falls short of the generic definition of moral turpitude. *Duenas-Alvarez,* 549 U.S. at 193. Zaragoza Rios points to two California Court of Appeals cases which suggest that California prosecuted nonverbal, ambiguous conduct under § 422 until 2017.

In *In re Tye S.*, the California Court of Appeals upheld the conviction of a schoolgirl "who yelled and threw up threatening gang signs." No. B189805, 2007

5

WL 602916, at *2 (Cal. Ct. App. Feb. 28, 2007). While the defendant's "accomplice made a handgun-like gesture" at a school official "and stated she was going to kill [her]," the defendant merely "'yell[ed] out things.'" *Id.* at *1–2. The California Court of Appeals did not identify what "things" the defendant yelled. *Id.* at *1.

In *People v. Gonzalez*, the California Court of Appeals held that similarly ambiguous conduct violated § 422. 180 Cal. Rptr. 3d 924, 930–31 (Cal. Ct. App. 2014), *rev'd,* 394 P.3d 1074 (Cal. 2017). The defendant in *Gonzalez* made a gang sign and "pointed his finger in the air toward the ceiling, allegedly simulating a gun." *Id.* at 926. While the California Court of Appeals acknowledged that the conduct at issue was nonverbal, it permitted the prosecution to go forward, reasoning that it would be "absurd" to interpret § 422 as excluding nonverbal threatening gestures. *Id.* at 931. The California Supreme Court reversed in 2017, holding that "a threat made through nonverbal conduct falls outside the scope of section 422." *People v. Gonzalez*, 394 P.3d 1074, 1147 (Cal. 2017). *Gonzalez* thus ended California's practice of prosecuting "symbolic gestures" under § 422—five years after Zaragoza Rios's convictions. *Id.* at 1148.

The nonverbal, ambiguous conduct prosecuted in *Tye S.* and *Gonzalez* does not, in my view, meet the three factors this Court found critical to concluding that § 422 is categorically a CIMT in *Latter-Singh*. First, gang signs and unspecified yelling do not necessarily threaten "underlying conduct" like death or great bodily

6

injury that "is itself a crime of moral turpitude." *Latter-Singh*, 668 F.3d at 1161. Second, in neither case was the defendant's conduct "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." *Id.* at 1162 (quoting Cal. Penal Code § 422). The *Gonzalez* defendant made a gang sign and handgun-like gesture while in a vehicle moving *away* from the threat's target. 394 P.3d at 1076. Even assuming that the handgun-like gesture was specific and threatening, it was equivocal as to what might occur and when. Finally, the ambiguity inherent in such nonverbal—or unspecified verbal—conduct undercuts a conclusion that such convictions establish "the evil intent required to render conduct morally turpitudinous." *Latter-Singh*, 668 F.3d at 1162.

## V.

In sum, I agree that, following the reasoning of *Medina-Rodriguez*, we are bound by *Latter-Singh* such that we cannot consider the "realistic probability" argument that Zaragoza Rios now makes. I write only to highlight that *Medina-Rodriguez* appears to be inconsistent with guidance from the Supreme Court, and from our own Court, clarifying that there are two ways to show a categorical mismatch. For that reason, I believe that it may be appropriate for our Court to revisit this issue. If we were to reach the "realistic probability" question, for the

7

reasons above, I would conclude that Zaragoza Rios's convictions are not categorically crimes involving moral turpitude.